No. 103,915

MARTIN MILLER, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(318 P.3d 155)

922

Opinion filed February 14, 2014.

*Jessica R. Kunen*, of Lawrence, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, *Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: In this K.S.A. 60-1507 habeas corpus action alleging ineffective assistance of appellate counsel, we review the Court of Appeals decision reversing Martin Miller's first-degree murder conviction because counsel failed to challenge on appeal an incor-

rect written jury instruction that diluted the State's burden to prove guilt beyond a reasonable doubt. *Miller v. State*, No. 103,915, 2012 WL 401601, at *9 (Kan. App. 2012) (unpublished opinion). The State concedes the written instruction was wrong but argues appellate counsel's failure to catch the mistake and raise it as an issue in Miller's direct appeal was neither deficient performance by the attorney nor prejudicial to the appeal. We reject these contentions, reverse Miller's conviction, and remand his case for a new trial.

The incorrect written jury instruction at issue read: "If you have a reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you must find the defendant not guilty." (Emphasis added.) The word "each" was substituted for "any" in what was the standard PIK jury instruction at that time. See PIK Crim. 3d 52.02 (2004 Supp.). This substitution effectively told the jury it could acquit Miller only if it had a reasonable doubt as to all of the elements the State was required to prove—rather than acquitting him if it had a reasonable doubt as to any single element. As admitted by the State, the written instruction was plainly wrong. "[T]he jury verdict required by the Sixth Amendment [to the United States Constitution] is a jury verdict of guilt beyond a reasonable doubt." *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) and harmless error analysis does not apply to a constitutionally deficient reasonable doubt instruction. 508 U.S. at 281.

We hold that appellate counsel's failure to challenge the written instruction was objectively unreasonable and prejudicial. The incorrect jury instruction constituted structural error rendering Miller's criminal trial fundamentally unfair to the point that its result is an unreliable indicator of his guilt or innocence. See *Rivera v. Illinois*, 556 U.S. 148, 160, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009) (defining structural error); *Washington v. Recuenco*, 548 U.S. 212, 218-19, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (same).

In so holding, we also must note our disagreement with a remark by the Court of Appeals that a reasonable doubt instruction orally given in Miller's case, which differed from the written instruction, was erroneous as well. *Miller*, 2012 WL 401601, at *6. The oral instruction correctly followed PIK Crim. 3d 52.02 (1995 Supp.),

which this court had previously approved. See *State v. Clark*, 261 Kan. 460, 475, 931 P.2d 664 (1997). The *Miller* panel's comment about the oral instruction was contrary to controlling law and unnecessarily resulted in multiple other appeals regarding PIK Crim. 3d 52.02 (1995 Supp.). See, *e.g.*, *State v. Smyser*, 297 Kan. 199, 203-06, 299 P.3d 309 (2013); *State v. Waggoner*, 297 Kan. 94, 97-98, 298 P.3d 333 (2013).

## Factual and Procedural Background

We discuss only those facts necessary to resolve the ineffective assistance of counsel claim raised in Miller's motion for relief under K.S.A. 60-1507. Our outcome renders moot other issues advanced in Miller's cross-petition for review.

The State charged Miller with the 2004 premeditated first-degree murder of his wife, Mary. To convict him, the State had to prove: (1) Miller intentionally killed his wife; (2) the killing was done with premeditation; and (3) the death occurred on or about July 28, 2004, in Douglas County. See K.S.A. 21-3401(a); see also *State v. Miller*, 284 Kan. 682, 163 P.3d 267 (2007) (Miller's direct appeal detailing the allegations and affirming his conviction based on the issues raised).

After the close of evidence, the district court conducted a jury instructions conference with Miller's trial counsel and the prosecutor. The court indicated it had reviewed instructions proposed by Miller's attorney and intended to use them with alterations not relevant here. It is clear from the conference transcript that the court and counsel were referring to a written copy of the proposed instructions, but the transcript does not identify the actual document being discussed, and the only written jury instructions in the record are those given to the jury. We are unable to ascertain if the proposed instructions were the source of the error that is the basis for this review.

When the trial reconvened, the court orally delivered the instructions. This typically consists of reading the actual written instructions that are later physically given to the jurors and taken into the jury deliberation room. But the oral instructions differed from the written instructions regarding the State's burden to prove the

elements of the crime charged beyond a reasonable doubt. The trial court orally gave these instructions:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove that he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty.

"The defendant is charged with the crime of murder in the first degree. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved: That the defendant intentionally killed Mary E. Miller; that such killing was done with premeditation; and, that this act occurred on or about the 28th day of July, 2004, in Douglas County, Kansas.

. . . .

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." (Emphasis added.)

The emphasized word "any" in the oral reasonable doubt instruction was replaced by "each" in the written instructions.

During closing arguments, the prosecutor directed the jury to the erroneous written instructions and referenced generally their utility by saying: "Judge Martin has instructed you in this case *and when you go back to the jury room you will be able to read these instructions for yourself*. There is only one instruction that matters: Did Martin Miller murder Mary?" (Emphasis added.) Similarly, after closing arguments the district court reminded the jurors: "The verdict form is on top to be signed by your presiding juror *and there is a copy of the instructions for each of you.*" (Emphasis added.) At no time did Miller's trial counsel object to the written reasonable doubt instruction that went into the jury deliberation room.

The jury returned a guilty verdict. Miller directly appealed to this court, raising numerous evidentiary issues, as well as prosecutorial misconduct. But appellate counsel did not challenge the written reasonable doubt instruction. This court affirmed Miller's conviction. 284 Kan. at 722.

Following the adverse outcome in his direct appeal, Miller moved for relief from the judgment under K.S.A. 60-1507(a) (prisoner in custody may claim sentence imposed in violation of state or federal Constitution), alleging numerous instances of ineffective assistance of trial and appellate counsel under the Sixth Amendment. One error asserted was the failure to challenge the written reasonable doubt instruction at trial and on appeal. Miller argued the instruction error allowed the jury to find him guilty without finding the State proved beyond a reasonable doubt every element of the first-degree premeditated murder charge. Alternatively, he argued the written instruction constituted structural error even in the absence of ineffective assistance of counsel.

The district court conducted an evidentiary hearing on the motion during which it heard testimony from Miller's attorneys. Miller's trial counsel testified that he generally submits proposed instructions in advance of trial and does not usually ask for special instructions. He said he did not notice the word "each" in the reasonable doubt instruction given to the jury. He testified he would have objected if he had noticed the wording. For her part, Miller's appellate counsel characterized the written instruction as clearly erroneous and said she absolutely "should have" challenged it on direct appeal.

But the district court denied Miller's motion. It found Miller had failed to demonstrate ineffective assistance of counsel. In particular, the court concluded the written reasonable doubt instruction was not erroneous and "[a]ny deviation from the current language of [the pattern reasonable doubt instruction], when viewed in the context of the instructions as a whole, still correctly informed the jury of the proper standard for determining whether the State had met its burden of proof."

In its analysis, the district court focused on the word "any" in the portion of the written instruction setting out the jury's test for finding Miller guilty. But it did not discuss the effect of the word "each" in the portion setting out the test for acquittal. And having restricted its analysis in this way, it reasoned neither a common-sense nor plain reading of the instruction supported Miller's argument that it allowed the jury to convict him on less than proof

beyond a reasonable doubt on every element of the crime charged. In support of its conclusion that the instructions as a whole were correct, the district court noted another instruction stated: "To establish this charge, each of the following claims must be proved" and then itemized the elements. The court further noted jurors were told at orientation that the State must prove each element beyond a reasonable doubt.

Miller appealed to the Court of Appeals, which reversed. The panel held the written reasonable doubt instruction misinformed the jury, was structural error standing alone, and appellate counsel had rendered ineffective assistance by failing to raise the issue on direct appeal. *Miller*, 2012 WL 401601, at *9. The panel reversed and remanded with directions that Miller receive a new trial. *Miller*, 2012 WL 401601, at *9.

In its structural error analysis, the panel relied on *Sullivan* and *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990) (error when a reasonable juror could interpret instruction to allow conviction on proof below that required by due process), *disapproved on other grounds by Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). The panel interpreted the written instruction as requiring that the State only prove beyond a reasonable doubt any single element of the first-degree murder charge—rather than all elements—to obtain a conviction. *Miller*, 2012 WL 401601, at *2. The panel further held that bringing this error to the appellate court's attention on direct appeal would have resulted in Miller's conviction being reversed. The panel added:

"The instructional defect . . . in Miller's trial had precisely the same impact as the structural error outlined in *Sullivan* and certainly would have required the same result if it had been raised on direct appeal. Miller would have received a new trial without measuring the effects for harmless error. Given the flawed instruction, the best that can be said about the verdict is the jurors found one of the elements or claims proven beyond a reasonable doubt. That's all the instruction required they do to find Miller guilty." *Miller*, 2012 WL 401601, at *4.

And in response to the State's argument that the district court's oral instruction prior to deliberations cured any error in the written instruction, the panel held:

"The district court's oral rendition does not match PIK Crim. 3d 52.02, and even if it did, we do not believe that would have cured the fundamental flaw in the written instruction. The trial transcript reflects the district court used 'any' in both sentences. The problem with the oral presentation lies in the ambiguity of the word 'any.' Depending on the context, it may mean or refer to 'one' or 'every.' Merriam-Webster's Collegiate Dictionary 53 (10th ed. 2001). In the oral instruction, it must be taken to mean 'any one' of the claims in the first use and 'every one' or 'all' in the second use to correctly outline the burden of proof. But nothing in the instruction cues the jurors to that shifting meaning. *So the flaw in the oral rendition may not be as pronounced as in the written version. But the difference is one of degree rather than one between accuracy and error.*" (Emphasis added.) *Miller*, 2012 WL 401601, at *6.

The panel further held Miller's appellate counsel did not provide objectively reasonable assistance on direct appeal because she failed to conduct "a sufficiently detailed review to identify deviations from the pattern instructions." *Miller*, 2012 WL 401601, at *8.

The State petitioned for review. Miller cross-petitioned for review on the other issues raised in his K.S.A. 60-1507 motion that the panel did not reach because it reversed based on the written reasonable doubt instruction. We granted both petitions under K.S.A. 20-3018(b). Jurisdiction is proper under K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review).

## ANALYSIS

Miller alleges he received ineffective assistance of counsel because neither his trial counsel nor his appellate counsel caught the written instruction error.

### Standard of Review

Ineffective assistance of counsel claims involve mixed questions of law and fact. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013) (citing *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 [2009]). An appellate court reviews the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Cheatham*, 296 Kan. at 430; *Wilkins v. State*, 286 Kan. 971, 980, 190 P.3d 957 (2008).

In Miller's case, the district court concluded its review after it held the written instruction was legally appropriate—a conclusion both sides agree now was wrong. And there are no material facts in dispute regarding the erroneous written jury instruction or the attorneys' testimonies at the evidentiary hearing. Accordingly, we are faced for all practical purposes with questions of law and must decide whether the Court of Appeals correctly viewed the relevant law in reaching its decision to reverse Miller's conviction.

*Discussion*

The Sixth Amendment guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); *State v. Gonzales*, 289 Kan. 351, 357, 212 P.3d 215 (2009); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). In other words, to be meaningful the right to counsel necessitates more than a lawyer's mere presence at a proceeding. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). " 'The purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.' " *Galaviz*, 296 Kan. at 174 (quoting *Strickland*, 466 U.S. at 689). The Sixth Amendment right to counsel is made applicable to state proceedings by the Fourteenth Amendment to the United States Constitution. 296 Kan. at 174.

The Court of Appeals limited its analysis to Miller's appellate counsel's performance. We agree with the panel that Miller's collateral attack on his conviction may be fully resolved with that issue, so it is unnecessary to consider whether trial counsel was ineffective.

To prove he received ineffective assistance of counsel in his direct appeal, Miller must demonstrate: (1) His appellate counsel's performance was deficient; and (2) this deficient performance prejudiced his direct appeal. See *Strickland*, 466 U.S. at 687; *Cheatham*, 296 Kan. at 431; see also *Laymon v. State*, 280 Kan. 430, 444, 122 P.3d 326 (2005) (reversing district court's denial of a K.S.A.

60-1507 motion founded upon ineffective assistance of appellate counsel).

*Deficient Performance*

When considering the alleged ineffective assistance of counsel, we must keep in mind why the parties have conceded the written reasonable doubt instruction was error. A burden-of-proof instruction is legally appropriate if it accurately describes the standard the jury is required to apply in finding the defendant guilty or not guilty. See *State v. Gallegos*, 286 Kan. 869, 877, 190 P.3d 226 (2008) (holding burden-of-proof instruction not reversible error because, on the whole, instruction accurately stated the law).

In Kansas criminal proceedings, the State's burden is to prove the defendant's guilt beyond a reasonable doubt; to satisfy that burden, the State must *"prove beyond a reasonable doubt each required element of [the charged] crime."* (Emphasis added.) K.S.A. 2013 Supp. 21-5108(a); see K.S.A. 21-3109; *State v. Hall*, 270 Kan. 194, 195, 14 P.3d 404 (2000). At the time of Miller's June 2005 trial, the Kansas pattern reasonable doubt instruction read:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.) PIK Crim. 3d 52.02 (2004 Supp.).

The written instruction given at Miller's trial was erroneous because it told the jury to acquit Miller only if it had a reasonable doubt as to every element of Miller's first-degree murder charge rather than a reasonable doubt as to a single element. And in doing so, it did not correctly describe the standard that the jury was required to apply in finding Miller guilty or not guilty. See *Gallegos*, 286 Kan. at 877.

In light of this, we must consider whether Miller's appellate counsel's failure to catch this mistake in the written instruction constituted performance falling below an objective standard of reasonableness. See *Cheatham*, 296 Kan. at 431; *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988) (test for appellate counsel same as

for trial counsel). Deficient performance means "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant claiming ineffective assistance of appellate counsel must first demonstrate " 'counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness.' " *State v. Smith*, 278 Kan. 45, 52, 92 P.3d 1096 (2004).

Likewise, to determine whether appellate counsel's performance was objectively reasonable, the reviewing court " 'must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Baker*, 243 Kan. at 7 (quoting *Strickland*, 466 U.S. at 690). We employ a strong presumption that counsel's conduct was reasonable. See *Cheatham*, 296 Kan. at 432.

Because it held the jury instruction was not error, the district court did not make any factual findings about appellate counsel's performance relative to the written instruction. But it did receive Miller's appellate counsel's uncontroverted testimony that she did not notice the error, should have noticed it, and her representation of Miller in his direct appeal was deficient in this regard. On this basis, we hold the record is sufficient to determine whether counsel's conduct was deficient. See *Cheatham*, 296 Kan. at 450 (record adequate to permit review of conflict-of-interest claim despite trial court's failure to determine whether facts established conflict because it applied an incorrect legal standard to the claim).

The Court of Appeals panel concluded appellate counsel's performance was deficient because she did not find and assert the defect in the written burden-of-proof instruction, explaining:

"In exploring potential issues in a criminal appeal, a lawyer should carefully examine the jury instructions as a matter of course. Instructional error provides an especially fertile ground for appellate issues. [Citations omitted.] Even in pattern instruction states, such as Kansas, error of the sort in this case may turn up. Or a district court may have chosen to tinker infelicitously with a pattern instruction. The standard of care requires a sufficiently detailed review to identify deviations from the pattern instructions. The time and effort to conduct that review in a given case is minimal. Miller's [appellate] counsel did not satisfy the standard." *Miller*, 2012 WL 401601, at *8.

As the State points out, failure to raise an issue on direct appeal is not per se ineffective assistance. See *Laymon*, 280 Kan. at 439. "Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." *Baker*, 243 Kan. at 10. But Miller's appellate counsel did not testify that she declined to raise the instructional error to focus attention on other challenges in the direct appeal or after carefully considering it along with all other potential issues. Rather, the uncontroverted evidence shows she simply did not notice the error. And although she admitted a belief that the prosecutorial misconduct argument she did raise was stronger than the jury instruction issue that she missed, nothing in the record suggests the decision to raise one issue but not the other was the product of strategy. In other words, there was simply no professional judgment exercised in failing to bring this admitted instruction error before an appellate court. See 280 Kan. at 444 (appellate counsel objectively unreasonable in failing to argue unsettled issue on appeal when law "counseled in favor" of the argument and attorney should have known argument existed).

The State advances other arguments in favor of finding Miller's appellate counsel's performance satisfactory. None are persuasive.

First, citing *State v. Womelsdorf*, 47 Kan. App. 2d 307, 274 P.3d 662 (2012), *rev. denied* 297 Kan. 1256, and *State v. Beck*, 32 Kan. App. 2d 784, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004), the State argues appellate counsel would not have known there was an instruction error from the trial transcripts because the district court's oral instruction was correct. But neither *Womelsdorf* nor *Beck* consider appellate counsel's failure to raise a jury instruction error on appeal. Rather, both simply find no error in the pre-2004 PIK Crim. 3d reasonable doubt instruction. *Womelsdorf*, 47 Kan. App. 2d at 334; *Beck*, 32 Kan. App. 2d at 787-88. Moreover, the State's argument ignores the fact that the written jury instructions were filed in the district court and, like the trial transcripts, also available for appellate counsel's review.

Second, the State argues Miller's appellate counsel strategically omitted the reasonable doubt instruction as an issue on appeal because, lacking an objection at trial, the issue would be reviewed

under the clear error standard, citing *State v. Engelhardt*, 280 Kan. 113, 134, 119 P.3d 1148 (2005) (instruction error not raised at trial reversible only if instruction is clearly erroneous); see K.S.A. 22-3414(3). It further asserts "appellate counsel could have quite reasonably decided to focus her energies on issues with a greater likelihood of success." But the record belies the State's claim. As mentioned, there is no evidence appellate counsel elected not to raise the instruction issue for this or any other tactical reason. She testified she made a mistake of oversight, not strategy.

Third, the State argues not raising the issue on appeal was reasonable because oral instructions prevail over written ones. It cites *State v. Norris*, 10 Kan. App. 2d 397, 699 P.2d 585 (1985), but this case is inapposite. In *Norris*, the Court of Appeals held Kansas law requires a district court to give oral jury instructions after the close of evidence and before closing arguments. It further held the district court erred when it failed to give oral instructions and submitted only written instructions to the jury. But *Norris* does not address what happens when there is a conflict between oral and written instructions. It supports only a proposition that oral instructions are indispensable. See 10 Kan. App. 2d at 398-402.

Notably, this court has never addressed whether an oral instruction can cure a written instruction error. In *State v. Castoreno*, 255 Kan. 401, 411-12, 874 P.2d 1173 (1994), we quoted *Norris* in holding that a correct written instruction does not overcome defects in a trial court's oral instructions because orally instructing the jury on applicable law is one of a trial court's fundamental duties. But *Castoreno* does not address the impact of incorrect written instructions when correct oral ones are given. The most that can be said in Miller's trial is that the district court succeeded in its duty to orally instruct the jury.

The Court of Appeals observed that in Miller's case the jurors would not appreciate the subtleties within the oral instruction upon hearing it amidst the "flood of words being showered upon them." *State v. Miller*, No. 103,915, 2012 WL 401601, at *6 (Kan. App. 2012) (unpublished opinion). It speculated that jurors would only parse the instructions after retiring to the jury room, and "almost certainly" would have relied on the written instructions in perform-

ing their duty. *Miller*, 2012 WL 401601, at *6. Given the one-word nuance between the two instructions and the fact that the correct instruction was oral while the incorrect instruction was in writing and available to the jury during its deliberations, we agree.

Finally, the State asserts the instructions as a whole leave no question the State was required to prove each element of the premeditated first-degree murder charge beyond a reasonable doubt, citing *State v. Mitchell*, 269 Kan. 349, 355, 7 P.3d 1135 (2000). It suggests appellate counsel reasonably could have refrained from raising the instruction error because the error was harmless. But the instructions as a whole did not accurately state the law because the other written instructions did not alleviate the error. Indeed, the only instruction defining for the jury the State's burden of proof was the instruction that was wrong. And this error was of sufficient magnitude that a likely outcome would have been a determination of structural error, without even considering whether the error was harmless. No reasonable attorney, after noticing this error in defining the State's burden of proof, would have passed on raising the issue in his or her client's appeal.

To summarize, we agree with the panel that Miller's appellate counsel's failure to locate and assert the defect in the written reasonable doubt instruction fell below an objective standard of reasonableness and constituted deficient performance.

### Prejudice

Miller must next establish counsel's deficient performance prejudiced his appeal to the extent that there is a reasonable probability that, but for the deficient performance, the appeal would have been successful. See *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011); *Baker*, 243 Kan. at 7. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Cheatham*, 296 Kan. at 431. As the United States Supreme Court wrote in *Strickland*:

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. [Citation omitted.] The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify

reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." 466 U.S. at 691-92.

In Miller's direct appeal, this court affirmed his conviction after agreeing that two of the errors asserted were harmless, both individually and cumulatively, in light of the "overwhelming evidence" against him. *State v. Miller*, 284 Kan. 682, 721-22, 163 P.3d 267 (2007). In this appeal, the Court of Appeals did not concern itself with whether the addition of the written instruction error created a level of uncertainty in the direct appeal's outcome. Under *Sullivan*, it deemed the written instruction error "structural" and reversed the conviction despite the evidence against Miller. See *State v. Jones*, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010) ("Errors are structural when they defy analysis by harmless-error standards because they affect the framework within which the trial proceeds."). We agree with the panel that *Sullivan* and its progeny would have required reversal of Miller's conviction if the instructional issue had been raised in Miller's direct appeal.

Due process and the Sixth Amendment right to a jury trial require that a criminal conviction rest upon a verdict of guilt beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). A jury instruction that a jury is reasonably likely to have applied in a way that could produce a guilty verdict despite reasonable doubt is per se prejudicial. See *Sullivan*, 508 U.S. at 278-81 (jury instruction that unconstitutionally defined reasonable doubt was per se prejudicial); see also *Estelle*, 502 U.S. at 72 (interpreting ambiguous jury instruction requires reviewing court to determine whether reasonable likelihood jury applied instruction in a way that violated the United States Constitution); *Cage*, 498 U.S. at 41 (reasonable doubt jury instruction which equated reasonable doubt with grave uncertainty and tied it to moral rather than evidentiary standard violated due process).

When the trial court instructs the jury in such a manner that the instruction does not procure a verdict of guilt beyond a reasonable doubt, a defendant's right to a jury trial has been denied. *Sullivan*, 508 U.S. at 278. If this occurs, prejudice is presumed because no

verdict has been rendered that a reviewing court could then determine would be the same, but for the error, in a harmlessness analysis. 508 U.S. at 280. "[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." 508 U.S. at 279. The Court has required reversal when a trial court unconstitutionally defined reasonable doubt. See *Sullivan*, 508 U.S. at 280-82.

The State argues there is no reasonable likelihood the jury applied the instruction as Miller asserts because the instruction did not tell the jurors what to do if they found reasonable doubt as to a single element but not as to each element. It contends the jury was not misled because it did not ask any questions about the reasonable doubt instruction. To support these propositions, the State relies on an Alaska Court of Appeals case, *Bohanan v. State*, 992 P.2d 596 (Alaska App. 1999). In that case, the trial court provided a written jury instruction that deviated from the correct instruction that was delivered to the jury orally. The written instruction read:

" 'If you find from your consideration of all the evidence that each of [sic] one of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.

" 'If you find from your consideration of all the evidence that *each of [sic] one of these propositions has not been proved beyond a reasonable doubt,* then you shall find the defendant not guilty.' (Emphasis added.)" 992 P.2d at 604.

In determining that the instruction did not invalidate the defendant's subsequent conviction, the Alaska court dismissed the language as mere boilerplate that judges and attorneys are so used to seeing they do not actually notice it. 992 P.2d at 604. The court held the jury must have understood the wording was a mistake because: (1) The oral instruction was correct; (2) the equivalent written instruction for another charge was correctly worded; (3) the general instruction on reasonable doubt told the jury the burden of proof never shifts to the defendant; (4) the attorneys' summations emphasized the proper burden of proof; and (5) the jury could not have reached a verdict if it interpreted the instruction literally. 992 P.2d at 604-05.

But neither *Bohanan* nor its specific rationales upon which the State relies are persuasive. First, *Bohanan* is distinguishable because the district court in Miller's case gave only one reasonable doubt instruction instead of one for each of the multiple charges. And the *Bohanan* court's justification that the district court also instructed the jury that the burden of proof never shifts to the defendant is misplaced because the reasonable doubt instruction describes how a jury determines whether the State has met its burden—not how the burden is allocated among the parties. Second, a literal reading of the written instruction given in Miller's trial does not produce a scenario in which the jury could not render a verdict. In *Bohanan*, the district court instructed the jury to acquit if it had a reasonable doubt as to each claim but to convict if it had no reasonable doubt as to each. The instruction left a theoretical "gap" between "guilty" and "not guilty" verdicts by failing to provide for a situation in which the jury had a reasonable doubt as to a single claim.

"As a general rule, juries are presumed to have followed the instructions given by the trial court." See *State v. Kunellis*, 276 Kan. 461, 484, 78 P.3d 776 (2003). The instructions as a whole in Miller's case did not impart to the jury the proper standard for determining whether the State established his guilt to the constitutionally required degree of certainty. A literal reading of the erroneous instruction tells the jury it must acquit Miller only if it has a reasonable doubt as to each element of the charged offense. And except for the district court's correct oral reasonable doubt instruction, no other instruction given—written or otherwise—could have cured the error. More precisely, none address a crucial subject: how the jury should convert the evidence into a verdict based upon how convincing that evidence is.

Finally, the State argues the written instruction error was not per se prejudicial under *Sullivan* because the error would have been amenable to harmlessness analysis. It analogizes the error to failing to instruct the jury on an element of the charged offense. See *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). We disagree.

In *Neder*, the Court held that a district court did not commit structural error when it wholly failed to instruct the jury on an element of a charged offense. 527 U.S. at 10. In reaching its conclusion, the Court observed that the error defining reasonable doubt in *Sullivan* permeated the entire verdict, which vitiated all of the jury's findings. 527 U.S. at 10-11. It distinguished *Sullivan* by likening the district court's failure to instruct on the element to other instruction errors to which harmless error analysis does apply—such as misstating an element or instructing the jury on a presumption that would satisfy the element. See 527 U.S. at 10-11 (citing *California v. Roy*, 519 U.S. 2, 5, 117 S. Ct. 337, 136 L. Ed. 2d 266 [1996]; *Carella v. California*, 491 U.S. 263, 109 S. Ct. 2419, 105 L. Ed. 2d 218 [1989]; *Pope v. Illinois*, 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 [1987]). The Court held the failure to instruct on an element amounted to no more fundamental an error than an otherwise defective element instruction. See 527 U.S. at 8-10 (distinguishing structural errors, such as deprivation of counsel, and observing error omitting element of offense "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence").

The instruction error at Miller's trial was more like the error in *Sullivan*, in which the trial court equated "reasonable doubt" with an inappropriately high degree of certainty. As the *Sullivan* Court cautioned, "the Sixth Amendment requires more than appellate speculation about a hypothetical jury's action." 508 U.S. at 280. And this is so "no matter how inescapable the findings to support that [hypothesized] verdict might be." 508 U.S. at 279. The instruction in Miller's case makes it unclear whether the verdict was procured despite the jury not being convinced of his guilt to the constitutionally required degree of certainty. A harmlessness inquiry is inappropriate because that assessment would require the court to determine anew from the record that Miller was in fact guilty beyond a reasonable doubt. *Neder* does not advance the State's cause.

We hold that the reviewing court would have reversed Miller's conviction and remanded for a new trial under *Sullivan* despite the evidence against Miller. His appellate counsel's failure to raise this

issue in Miller's direct appeal undermines our confidence in the outcome of that proceeding. See *Cheatham*, 296 Kan. at 447 (confidence in jury trial outcome undermined by defense counsel's errors). Appellate counsel's error prejudiced Miller. The outcome on this issue renders moot the issues Miller raised in his cross-petition for review.

But before we conclude, we must address the portion of the Court of Appeals panel's discussion indicating that the district court's oral reasonable doubt instruction also was erroneous. See *Miller*, 2012 WL 401601, at *6. As set out above, the oral instruction was:

"If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

In rejecting the State's argument that the oral instruction cured any defect the panel might discern in the written instruction, the panel wrote: "[T]he flaw in the oral rendition may not be as pronounced as in the written version. But the difference is one of degree rather than one between accuracy and error." 2012 WL 401601, at *6.

The panel's criticism of the oral instruction does not square with this court's controlling precedent. The panel apparently failed to appreciate that the oral instruction followed verbatim a prior version of the pattern reasonable doubt instruction, which this court has repeatedly accepted as legally appropriate—even if it was not a preferable rendition of the State's burden of proof. See PIK Crim. 3d 52.02 (1995 Supp); see also *State v. Smyser*, 297 Kan. 199, 206, 299 P.3d 309 (2013) ("We hold the reasonable doubt jury instruction was legally appropriate and not error."); *State v. Waggoner*, 297 Kan. 94, 99, 298 P.3d 333 (2013) ("[W]e conclude the reasonable doubt instruction in this case was not erroneous."); *State v. Herbel*, 296 Kan. 1101, 1124, 299 P.3d 292 (2013) ("While the older PIK instruction . . . was not the preferred instruction, it was legally appropriate."); *State v. Clark*, 261 Kan. 460, 475, 931 P.2d 664 (1997) ("[W]e hold that the provisions of PIK Crim. 3d

52.02 accurately reflect the law of this State and properly advise the jury in a criminal case of the burden of proof, the presumption of innocence, and reasonable doubt."); *State v. Pierce*, 260 Kan. 859, 871, 927 P.2d 929 (1996), *abrogated on other grounds by State v. Deal*, 293 Kan. 872, 269 P.3d 1282 (2012) ("We approve of the language used as a clear statement of the burden of the State in criminal trials.").

To be clear, the panel's disapproval of the district court's oral instruction on reasonable doubt was contrary to this court's case-law.

Judgment of the Court of Appeals reversing and remanding Miller's case with directions to the district court is affirmed. Judgment of the district court is reversed and remanded.